## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Name (under which you were convicted):Dedrick L Hickey | Docket or Case No.:CF-2018-983 <br> CN-25-599-SLP |
| Place of Confinement : <br> Allen Gamble Correctional Center | Prisoner No.:404004 |
| Petitioner (include the name under which you were convicted)Dedrick Lemont Hickey <br><br> v. | Respondent (authorized person having custody of petitioner)Michael Miller <br><br> **FILED** <br><br> JUN 0 2 2025 |
| The Attorney General of the State of Oklahoma <br> Gentner F. Drummond | JOAN KANE, CLERK <br> U.S. DIST. COURT, WESTERN DIST. OKLA. <br> BY_____, DEPUTY |

### PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:The District Court Of Oklahoma County

    (b) Criminal docket or case number (if you know): CF-2018-983

2.  (a) Date of the judgment of conviction (if you know): 10-14-21

    (b) Date of sentencing: 1-31-21

3.  Length of sentence: count1-25years count2-4 30years count 5 -35years

4.  In this case, were you convicted on more than one count or of more than one crime?    ☒ Yes    ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:5 counts of Robbery with firearm

6.  (a) What was your plea? (Check one)

    ☒ (1)    Not guilty      ☐ (3)    Nolo contendere (no contest)

    ☐ (2)    Guilty          ☐ (4)    Insanity plea

    (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?Plead not guilty to all counts.

(c) If you went to trial, what kind of trial did you have? (Check one)

⊠ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ⊠ No

8.    Did you appeal from the judgment of conviction?

⊠ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: Oklahoma Court of Criminal Appeals

(b) Docket or case number (if you know): F- 2022-142

(c) Result: Affirmed

(d) Date of result (if you know):7-3-24

(e) Citation to the case (if you know):Not for Publication

(f) Grounds raised:1)Jury question/improper communication with jury outside presence of defendant

2)Improper jury instruction

3)Improper fingerprint evidence

4)Sentencing Errors

5)Improper identifications

6)Batson v Kentucky  violation

7)Double jeopardy

8)Unlawful discharge of jury

9)Conflict of interest

10)Disqualified judge

11)Ineffective Assistance of Counsel

(g) Did you seek further review by a higher state court?    ☐ Yes    ⊠ No

If yes, answer the following:

(1)  Name of court:

(2)  Docket or case number (if you know):

(3)  Result:

      (4)  Date of result (if you know):

      (5)  Citation to the case (if you know):

      (6)  Grounds raised:

(h) Did you file a petition for certiorari in the Unites States Supreme Court?    ☐ Yes    ☒ No

      If yes, answer the following:

      (1)  Docket or case number (if you know):

      (2)  Result:

      (3)  Date of result (if you know):

      (4)  Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☐ Yes    ☒ No

11.    If your answer to Question 10 was "Yes," give the following information:

    (a)    (1) Name of court:

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

        (4) Nature of the proceeding:

        (5) Grounds raised:

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes    ☒ No

        (7) Result:

        (8) Date of result (if you know):

    (b) If you filed any second petition, application, or motion, give the same information:

        (1) Name of court:

        (2) Docket or case number (if you know):

        (3) Date of filing (if you know):

        (4) Nature of the proceeding:

        (5) Grounds raised:

        (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☐ Yes    ☒ No

(2) Second petition:    ☐ Yes    ☒ No

(3) Third petition:    ☐ Yes    ☒ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: to proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE: Double Jeopardy**

(A)The state of Oklahoma violated petitioner's constitutional rights under the **fifth**

**amendment's double jeopardy clause** by provoking and inducing the public Defender's

office to join a motion for mistrial.

(B)Bad Faith Prosecutorial and judicial misconduct through ex parte communications between trial judge and state prosecutors about substantive matters violating clearly established federal law **5 U.S.C.A. § 557 (D)1(A)**and petitioners constitutional rights under the **fourteenth** and **fifth** amendments due process and double jeopardy clause.

(C)The trial court deprived petitioner of his constitutional rights under the **fifth amendment's double jeopardy clause** where petitioner did not retain primary control over course to be followed upon declaration of the mistrial.

(D)Defense counsel **deprived** petitioner of his rights under **fifth, sixth,** and **fourteenth** amendments by failing to expressly object to declaration of a mistrial, failing to investigate pertinent facts surrounding the mistrial, erroneously advising the petitioner not to object to the mistrial and abandoning the client's strongest argument.

(E)The trial court violated the petitioner's constitutional rights under the fifth amendment by declaring a mistrial prematurely without a factual or valid **manifest necessity** for such mistrial or inquiry into obvious available less drastic alternatives mandated by the United States Supreme Court and petitioner was subsequently retried for the same offenses.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim): Facts set forth in ground one double jeopardy are as follows. The states attorneys were

having difficulties producing witnesses for the first trial. The public defender's office explained to the petitioner that the states attorneys were having issues securing witnesses for the trial and the state prosecutors planned to file a motion to declare two witnesses unavailable. The state

prosecutors planned to use the preliminary hearing transcript at trial to substitute the

unavailable witnesses. As the first trial went on witnesses from three of the robberies testified

witnesses from the other two robberies did not testify. At the end of the third day of the first

trial the trial judge asked the state prosecutor if they had any other available witnesses, state

prosecutors stated one more, transcripts from the first trial that were denied the petitioner will

reflect the states prosecutors stated they only had one witness available at the end of the third

day of the first trial. It is obvious the trial went cold after the third day and several state

witnesses were not responding to subpoenas or just was not available to testify. The trial judge

then excused the original state prosecutors ex parte from the remainder of the first trial under

false pretenses that state prosecutors would expose citizens to covid -19 if they did not declare

a mistrial in the petitioner's trial and go into quarantine immediately. Original state prosecutors

were excused ex parte without taking a available rapid covid test or any factual **manifest**

**necessity** to justify mistrial on states motion.  Later that night the trial judge the states attorney

and the Oklahoma county public defender reached an agreement to declare a mistrial in the

matter. There were already issues with several witnesses being unavailable and once the states

burks witness tested positive for covid – 19 that made another state witness unavailable for the

first trial. The states attorneys evidence was insufficient when the first trial begin but states

attorneys still seated a jury with several witnesses being unavailable, unresponsive or just

uncooperative. At that point the state prosecutors' evidence was insufficient and it would be

difficult to get a conviction if the trial continued with witnesses being unavailable and

insufficient evidence. The states prosecutors then used the covid -19 issue to induce and

provoke the Oklahoma county public defender's office into an agreement to join a motion for a

mistrial followed by bad faith conduct between trial judge and state prosecutors. The states

attorneys were the sole beneficiary to the mistrial. It is clear that the states attorney's intent was to buttress weaknesses in the evidence. A mistrial would give the states attorneys more time to secure unavailable witnesses, the preview at the defense attorneys strategies and the opportunity to correct any errors made by states attorneys during first trial gave the states attorney a more favorable opportunity to convict at retrial. The state prosecutors facilitated the mistrial through ex parte communications with the trial judge that compelled the trial judge to excuse the state prosecutors ex parte for the remainder of the trial. **See trial transcripts from 9-15-21.** A false narrative presented to the public defender's office about health and safety concerns from Covid-19 exposure induced and provoked the public defender's office to join in the states motion. The public defender's office only joined in the motion based off health and safety concerns and the risk of contracting covid-19 from the state prosecutors if the petitioners jury trial resumed with state prosecutors being exposed to covid -19. The states attorney's health and safety concerns argument has no merit. The fact that the states attorneys was excused ex parte by the trial court without taking a covid test or factual confirmation that states attorneys really did pose a risk to health and safety concerns prior to the trial court declaring a mistrial  severely prejudiced the petitioner .The only way state prosecutors could pose a risk to health and safety concerns sufficient enough to satisfy the United States Supreme Courts mandate of manifest necessity would have been state prosecutors testing positive for covid -19 . If state prosecutors did not have covid -19 there was never a risk to health and safety concerns like state prosecutors presented to the public defender's office and trial court to secure a agreement for a mistrial. The trial courts ex parte ruling was arbitrary and no plausible compelling covid -19 risk existed that would satisfy the United States Supreme Courts mandate of manifest necessity when the petitioner's trial was aborted. It's an undisputed fact that state

prosecutors were vaccinated and tested negative for covid-19 when the petitioner's trial was deleted. State prosecutors went into quarantine without taking a covid test but tested while in quarantine and was found to be covid -19 negative. It is not a coincidence that state prosecutors were excused ex parte by the trial court to go into quarantine without taking a rapid covid test. The rapid covid test was available at the time the state prosecutors was excused ex parte by the trial court .The states burks witness took a rapid covid test and found out he had covid -19 the same day the state prosecutors was excused ex parte by the trial court to go into quarantine without taking a rapid covid test .The trial court allowed state prosecutors to compel the court ex parte to excuse them from the remainder of the jury trial to go into quarantine without taking a covid test.The policy at the time the petitioners trial was aborted was everyone was supposed to take a rapid covid test prior to going into the courtroom. This policy can be verified through CDC and courtroom policy's during covid -19 pandemic. The petitioner was taking a rapid covid-19 test every morning prior to being brought to the courtroom during trial. This rapid covid-19 testing policy was being followed during the petitioner's trial. If trial court would have followed policy and procedure at the time the trial court excused state prosecutors ex parte then the mistrial motion filed by state prosecutors would have been moot and petitioners' constitutional rights would have not been violated and petitioner would not have been subsequently retried for the same offenses. The fact that the misrepresentation of covid -19 and the risk that state prosecutors posed to citizens was a false narrative used to secure an agreement for a mistrial filed on the state prosecutors motion, shows that consent was obtained through bad faith conduct between state prosecutor and the trial court.

see transcripts **from 9-15-21**. These ex parte communications between trial judge and state prosecutors about substantive matters that undermined the outcome of the trial violates the petitioners **fifth, sixth,** and **fourteenth amendment constitutional rights**. **The transcripts from 9-15-21(Mistrial Hearing)** begins with the trial judge pleading the state's case about the covid issue and explaining on the record that the court decided to excuse the states attorneys ex parte for the remainder of the jury trial without any actual finding of facts that covid risk was plausible. **Transcripts from 9-15-21 (mistrial hearing)** the states attorney says "within some short proximity between the test and the phone call from **Ms. Steadman** the witness was confirmed positive for covid. The only covid test that will give you results in a short proximity of time is a rapid covid test. The original covid test took several days to get results. Its clear from the trial transcript record that the states witness took a rapid covid test and was confirmed positive for covid -19.The states attorneys does not dispute the fact that the states witness took a rapid covid test bias and prejudice infected the trial when states prosecutors were excused ex parte by the trial court to go into quarantine without a covid test validating that an actual risk to health and safety concerns did exist. The fact that the states attorneys did not have covid and took a covid test after the trial court declared a mistrial instead of prior, shows bad faith on the part of trial judge and state prosecutor motivated by ex parte communications and the intent to subvert the U.S. constitutions Double jeopardy Clause. **Transcripts from 10-13-21** confirm the states attorneys were having issues securing witnesses. **Transcripts from 9-14-21** will confirm when trial judge asked the states prosecutor if they had any more available witnesses, the state's prosecutor stated one more. **The states witness coordinator Sandy Steadman can confirm every witness the state was having issues securing for the first trial. Subpoenas and records kept bythe witness coordinator should be apart of the trial record**

.Transcripts from the first trial were not made part of the original trial record only certain parts of the first trial were included. The trial record shows subpoenas were sent out but does not confirm what witnesses would be available for trial. The missing transcripts from the first trial and other missing material transcripts that were requested by the petitioner severely prejudiced the petitioner by denial of the full and complete trial record during perfecting of direct appeal. **Violating petitioners fifth** and **fourteenth amendment due process rights.** During the ex parte communications between the states prosecutor and the trial judge **the petitioner did not retain primary control over the course to be followed**. This is demonstrated by the agreement made with prosecuting attorneys to end the trial. The agreement was made the evening prior to the **hearing on 9-15-21. (Mistrial hearing) Transcripts from 9-15-21** confirm agreement was made prior to the hearing **on 9-15-21**. The prosecuting attorney states 'I made the call to you, your honor, and you understood that we would be moving for a continuance in this matter and there would not be a objection by the defense'. According to the trial transcripts the agreement was made ex parte with the state's prosecutors inducing and provoking both the trial judge and the public defender's office by controlling all the ex parte communications between the trial judge and the public defender's office. Per trial transcripts **from 9-15-21** at no point during the ex parte communications did the trial judge reach out to or speak directly to the public defenders office to notify them of the ex parte communications between the court and prosecuting attorneys or get a response from the public defender's office or the petitioner directly before dismissing the prosecuting attorneys ex parte for the remainder of the trial and agreeing to declare a mistrial without considering less drastic available alternatives to the mistrial. The public defender's office told the states attorneys there would not be an objection by the defense before discussing the matter with the defendant. Ex parte

communications between trial judge and state prosecutors about substantive matters that determine the outcome of trial are a violation of the **United States Constitutions Fifth Amendments Due Process Clause**. This also demonstrates the petitioner did not retain primary control over the course to be followed. On **9-15-21** the petitioner was told by the public defender's office that "there has been a mistrial in your case, one of the state's witnesses tested positive for covid 19." The petitioner then notified the public defender that he objected to the mistrial. The public defender then told the petitioner "I would advise you not to object to the mistrial ." The public defender stated that an objection would make the judge mad."The petitioner then told the public defender that if the states attorneys called a mistrial they could not try the petitioner again for the offenses. The petitioner clearly made an attempt to assert his double jeopardy rights. The public defenders then told the petitioner that the state could try the petitioner again if a mistrial was decided, stating the trial process would start over from the beginning. The only reason the petitioner did not object on the record is because the public defenders office advised the petitioner not to object to the mistrial and stated that retrial was not barred by double jeopardy .Defense counsel deprived the petitioner of his constitutional rights under the fifth, sixth and fourteenth amendments by advising the petitioner not to object to a mistrial filed on the states motion failing to expressly object to the mistrial on the states motion ,and joining in the states motion for mistrial without investigating the facts or circumstances surrounding the mistrial or exposing the state's case to adversarial testing .The record reflects the states attorneys induced the public defender's office to join the motion by misrepresenting a risk to health and safety concerns from covid exposure. The risk to health and safety concerns could have been remedied with a routine rapid covid test that would have revealed that vaccinated states attorneys did not have covid and did not pose a risk to health

and safety concerns. However, this does not excuse the fact that the public defender's office did not investigate the facts surrounding the mistrial before advising the petitioner not to object and joining the states motion **depriving** petitioner of his constitutional safeguards and effective assistance.The public defender's office did not mention the former jeopardy that had attached to the trial or consider less drastic available alternatives, ex parte communications were permitted by the public defender's office. The petitioner would gain nothing by joining the states motion and public defenders can not justify advising the petitioner not to object to a mistrial on the states motion by the mere fact that it would make the judge mad.

Public Defenders failed to expose the state's case to adversarial testing. This failure was a direct result and factor in why the petitioner was placed in double jeopardy, and subsequently retried for the same offenses. The facts of what was actually discussed in these ex parte communications between trial judge and state prosecutors will forever be between those two parties and erroneously the petitioner and the public defender's office were foreclosed from those facts due to prosecutorial misconduct and judicial bias.

It is clear from the trial transcripts **from 9-15-21** that the ex parte communications were substantive and did determine the outcome of the trial.

The states attorneys cannot argue beyond a reasonable doubt these ex parte communications did not prejudice the petitioner. They cannot argue the ex parte communications was done in good faith when neither the trial court nor the states attorneys mentioned the former jeopardy that attached to the trial or the obvious available alternative rapid covid test that if took by state prosecutors would have revealed state prosecutors did not have covid 19 and did not pose a risk to citizens making mistrial motion moot.  The states attorney argument that covid 19 exposure

is a manifest necessity to justify a mistrial rest solely on the fact that to continue the trial when states attorneys was exposed to covid presents a risk to all parties involved.

The argument fails for three reasons.

(1)The states attorneys were not the only people in the court room exposed to covid 19 by the states attorneys burks witness .everyone in the courtroom at the time the states burks witness testified  was exposed to

covid 19 the states witness was in the judges chambers interacting with court personnel and also came into the courtroom and took the stand right next to the trial judge  and testified in open court.

The public defender's office cross examined the states burks witness in open court the entire courtroom had just as much contact or exposure to the states burks witness as the state's attorneys.

If the risk was sufficient to justify the states attorneys being excused to go into quarantine

the entire courtroom should have been excused due to the alleged risk from covid exposure. **Conveniently the states attorneys were the only people in the courtroom excused ex parte by the  trial judge to go into quarantine because of this alleged risk,** everyone in the court room had contact/exposure with the witness but state prosecutors were the only people in the courtroom the trial judge determined posed a risk.

This is clearly an unreasonable determination people are exposed to covid 19 daily and will remain exposed until a cure is found or the virus is eliminated. If everyone went into quarantine every time someone came in contact with a person that tested positive for covid 19 without

taking a covid test to confirm the presence of the virus then people would  be going into quarantine just to find out they were covid 19 negative the whole time (example states attorneys).

The procedure followed by the trial judge and the states attorneys were contrary to the clearly established covid procedure at the time. Policy at the time called for states attorneys to get rapid covid tested before going into quarantine depending on test results if exposed to covid and quarantine was required only upon a positive covid test.

These procedures were put into place for a reason and deviating from policy and procedure seriously prejudiced the petitioner.

(2) Covid testing, rapid covid testing is the answer to covid exposure and the reason people do not require quarantine until test results confirm they are positive for covid 19 when exposed to the virus. Rapid covid testing was available and clearly established policy and procedure at the time the petitioner's case was declared a mistrial due to covid exposure that untimely did not affect or reach the states attorneys.

 (3)The states attorneys did not have covid 19 and the risk to health and safety concerns the states attorneys misrepresented to the Oklahoma county public defender's office and the trial court to get the public defenders office to join the states motion was premature and misleading.

The discharge of duties to investigate without due diligence inquiry into facts pertinent in determining if a significant risk to citizens actually did exist or if state prosecutors who initiated a motion for mistrial were trying provoke a mistrial with the intent to subvert the

protections afforded by the United States constitutions **Double Jeopardy Clause** was an abuse of discretion that equaled a manifest constitutional error on the state trial court.

Manifest constitutional error put the petitioner in double jeopardy.

Contrary to clearly established federal law.

It was well known that rapid covid tests was available. It was also well known that states attorneys was having problems securing witnesses for the first trial when the states burks witness tested positive for covid 19 and become unavailable for the first trial.

Wherefore it became clearly unreasonable and prejudiced the petitioner when trial judge entertained ex parte communications with state prosecutors ex parte and excused state prosecutors ex parte from the trial prior to declaration of a mistrial, without a positive covid test or factual findings that state prosecutors did have covid and risk to public safety was plausible not just feasible.

Its obvious trial judge declared mistrial to afford the prosecutor a more favorable opportunity to convict. The fact that six days prior to grant of mistrial on states motion trial judge denied defense motions for appointment of conflict counsel/continuance without proper inquiry or a factual finding or determination of the ruling.

## 28 U.S.C.A. § 2254 (D)(2)

Citing "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings."

The trial record demonstrates the state prosecutors case was strengthen significantly by the trial court dismissing the state prosecutors ex parte prior to declaration of the mistrial.

Witnesses that were previously unavailable were tracked down and made available, the sneak preview into the public defender's office defenses and the opportunity to buttress weaknesses in the states own case all benefited the states prosecution.

Here are a few examples of how the state's case was strengthened by the mistrial.

James Hoagland witness that testified at preliminary hearing and at first trial but did not testify at second trial due to conflicting statements of identification that did not match the petitioner.

Ron Ison led detective on the robbery case but did not testify at either trial. This detective was a lead detective signed off on search warrants and had instrumental involvement in the investigation and the arrest of the petitioner but was never called to testify at either trial. (Officer suspected of misconduct)

Jerrick Thrasher witness that was never called due to being unavailable during first trial.

Ashley Stone witness that never testified at the first trial but was declared unavailable at the second trial and preliminary hearing transcripts were read at the second trial.

Fabiola Molina witness that never testified at preliminary hearing and did not testify at the petitioners first trial but testified at the second trial and could not make a positive identification of the petitioner.

Lawrence warees was scheduled to testify at first trial but did not testify at first trial, however The witness did testify at the second trial.

Eric Vincent states burks witness that tested positive for covid 19 by taking a rapid covid test and was the reason for the mistrial, did not testify at the first trial, but was available at the second trial and did testify for the state prosecutors.

Brittany Dabrney did not testify at either trial due to the witness being unavailable.

Thao Warme was a witness that was endorsed after the first trial and was not on the witness list at the first trial this mere fact shows the prosecution's case was strengthen by the mistrial and new witnesses and evidence was added to strengthen the state's case.

Leads online was an exhibit that was endorsed at the second trial and strengthened the states case at the second trial.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)     **Direct Appeal Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☒ Yes          ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          ☐ Yes          ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | | | |
|---|---|---|---|---|
| (3) Did you receive a hearing on you motion or petition? | ☐ Yes | ☒ No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ Yes | ☒ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☒ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Exhausted through Direct Appeal.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: Direct Appeal.

**GROUND TWO: Conflict of Interest**

The petitioners constitutional sixth amendment right to conflict free counsel was violated by the trial judge.

(A)The public defender's office became bias towards the petitioner after petitioner filed a lawsuit against the office and public defender Nicole Burns.

Assignment of conflict counsel from the same office that the petitioner had a pending lawsuit against clearly **deprived** the petitioner of the **sixth amendment right to conflict free counsel.**

(B)A complete breakdown in communication between petitioner and the public defender's office

**deprived petitioner of the sixth amendment right to conflict free counsel.**

(C)Conflicts arose when counsel advanced interests that were not the petitioners best interest to the detriment of the petitioner **depriving petitioner of the sixth amendment right to conflict free counsel.**

(D)Trial judges' **failure to inquire into conflicts deprived the petitioner of the sixth amendment right to conflict free counsel.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim): Facts set forth in ground two conflict of interest are as follows.

The trial judge failed to inquire into several known conflicts of interests contrary to the United States Supreme Courts mandate.

Initially the petitioner filed a federal lawsuit against public defender Nicole Burns, the petitioner's public defender at the time the lawsuit was filed. The United States Supreme Court has determined that a suit against a state official in its official capacity is not a suit against the official but rather a suit against the official's office. The lawsuit against public defender

Nicole Burns created a conflict and public defender Nicole Burns was removed from the petitioner's case. The trial court then appointed a new public defender from the same office that petitioner had a pending lawsuit against. The petitioner **objected** to this appointment on the record at a hearing **held on 6-2-21** to remove public defender Nicole Burns from the petitioners case. Once the petitioner objected to this appointment of a different public defender from the same office that the conflict was coming from, the trial judge stated he was putting up a wall between the two public defenders from the same office and that the two public defender s was

prohibited from discussing the petitioners   case among each other. However, the wall had already been breached at the time the wall was put up by the trial court.

The two public defenders had already had discussions about the petitioner's case being in the same office the two public defenders continued to talk about the case among each other.

The second chair public defender Ryan Loewenstern who was also from the same public defender's office that the conflict was coming from and who was not at the hearing to remove public defender Nicole burns when the trial judge put the wall up, told the petitioner that Nicole Burns the same public defender that the petitioner named in a federal lawsuit and that the trial judge put a wall up against told him and Jonathan Neil that Kathryn Phariss a witness for the states attorneys had showed up at preliminary hearing loaded on drugs. Public defender Ryan Loewenstern was the second chair counsel at the petitioner's trial and was not at the **hearing on 6-2-21** when the trial judge put the wall up. The public defender was not aware he had confirmed that the wall put up by the trial judge to stop the conflict of interest had been breached by the two coworkers in the same office. **The duty of the trial court mandated by the United States supreme Court to inquire into potential conflicts of interests were not followed in the petitioner's case.** The conflict persisted when trial court put up the wall because

1)the lawsuit was still pending against the public defender's office at the time the petitioner case went to trial and public defenders could have been called as witnesses against petitioner in the pending lawsuit therefore creating a conflict of interests when a division of loyalties is apparent.

2)The issue of bias coming from the public defender's office towards the petitioner due to the

pending lawsuit and allegations of ineffective assistance of counsel in the pending lawsuit.

3)the close relationship between the public defenders and the public defender's office the

public defenders work for could clearly influence the way the public defenders defended the

petitioner at trial.

4)The wall had already been breached at the time the court put the wall up.

5)A complete breakdown in communication between the petitioner and the public defender's

office.

The pending lawsuit and allegations of ineffective assistance of counsel that cast doubt on the

competency of the public defender's office affected the public defender's office performance

and representation of the petitioner at trial.

This is demonstrated by the fact that the second chair Ryan Loewenstern had never tried a case

before being assigned to the petitioner's case. The lead public defender Jonathan Neil also had

very little trial experience trying cases as well.

Fairly new less experienced public defenders were assigned to the petitioner's case after the

petitioner filed the lawsuit against the public defender's office.

The lack of experience and being basically new to the job clearly affected the public defenders

office performance and representation of the petitioner.

**On 9-9-21** the petitioners jury trial call docket, Jonathan Neil filed a motion for a continuance

And/or appointment of conflict counsel. The motion states "the original counsel on the case

Nicole Burns was sued by the defendant hickey in federal court, Jonathan Neil was given the case as substitute counsel **effective 6-2-21** via this court. Mr. Hickey contends that this is an improper and impossible to cure conflict despite judge's admonishment of counsel to effect an iron wall regarding this case between new counsel and former counsel Burns."

Public Defender Jonathan Neil also stated "requiring this matter to proceed as currently scheduled **on 9-13-21** would prejudice defendant and severely impair his ability to raise an adequate defense at trial due to his lack of communication with his defense attorney."

The trial judge denied the motion without proper inquiry or finding of facts on the ruling.

If trial judge would have followed the United States Supreme Courts mandate to inquire into potential conflict s of interests, he would have discovered that Nicole Burns and the new public defender had already discussed the case and that the wall the court put up was insufficient. The appellate court considers four factors when reviewing a district courts denial of a motion to substitute counsel 1) Whether the defendants request was timely, the defendants request was **filed 9-9-21** call docket before the trial started. This was the first opportunity public defender Jonathan Neil had to address the conflict after being assigned the defendant case.2) If district court adequately inquired into the reasons for making the motion, The district court did not inquire into the reasons for the motion and denied the motion **On 9-9-21** without any finding of facts on the ruling.3)If the defendant attorney conflict was so great that it led to a total lack of communication Precluding an adequate defense. The defendant only talked with the public defender once before the first trial started. The motion filed by public defender Jonathan Neil for continuance and/or Appointment of conflict counsel confirms the lack of communication between the petitioner and public defender. **Transcripts from 9-13-21 page 6 Tr 10-12.**

Jonathan Neil resubmitted the motion at the beginning of the trial on the bases of lack of communication with the petitioner about the case. The resubmitted motion was also denied. The fact that public defenders joined a motion for a mistrial on the state's attorneys' motion without any discussions with the petitioner before making determinative steps, shows a total lack of communication during a critical stage of the trial process. Appeals courts have held that counsel has an actual conflict of interest

for the purposes of the **sixth amendment right to counsel**, when forced to make choices advancing other interest to the detriment of his client. Counsels' decision to join a motion for a mistrial filed by the state without talking with the petitioner prior to doing so was a factor that lead to the detriment of the petitioner and advanced the interests of state prosecutors.

4)The defendant substantially and unreasonable contributed to the breakdown in communication.

There was a breakdown in communication but the defendant did not contribute to it.

The Supreme Court of The United States has held that legal assistance which is ineffective in preserving fairness of trial does not satisfy the mandate of the sixth amendment. The proper waiver of right to conflict free counsel should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record.

No were in the trial record does the petitioner knowingly intelligently or voluntarily waive the right to conflict free counsel. It is confirmed in the record that petitioner and public defenders' office objected to the appointment of public defenders due to several conflicts of interest.

**See transcripts from 6-2-21and motion for continuance and/or appointment of conflict counsel filed 9-9-21).**

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)    **Direct Appeal Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on you motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Exhausted through Direct Appeal.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: Direct Appeal.

**GROUND THREE:  Bias Trial Judge Disqualified**
The trial judge violated the petitioner's constitutional rights under the fourteenth amendments due process clause.

(A)The trial judge failed to rule on a motion to recuse and/or address the issue of judicial bias towards the petitioner. Contrary to clearly established federal law **28 U.S.C.A. & 144 and 28 U.S.C.A. § 455 (A)(B)1**

(B)The Trial judge failed to follow **federal rule of criminal procedure Rule 42 (B)4** direct contempt procedures by not certifying his disqualification.

Direct contempt citation involving criticism and disrespect of trial judge prohibited the judge from proceeding any further in the matter.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim): The trial judge was disqualified from trying the petitioner's case due to the high potential for judicial bias in violation of the fourteenth amendment.

The petitioner requested to go pro se during petitioner's jury trial. During a feretta hearing held on 1-22-21 the petitioner was denied the right o go pro se and to present a self-made defense.

The trial judge stated the petitioner's reasons for wanting to represent himself were not good enough and denied the petitioner's request. The petitioner became frustrated and stated fuck you cocksucker to the judge and started criticizing the judge. The judge then held the petitioner

in contempt of court starting off with 3 months and running the contempt citation up to one year from going back and forth with petitioner.

The petitioner later requested the judge recuse himself and filed in camera request pro se.

The trial judge refused to address the matter of judicial bias and told the petitioner the motion to recuse had to filed by the public defender.

The trial judge stated on the record at the hearing held 6-2-21 that the motion to recuse must be filed by the attorney. The petitioner told the public defender that the judge was disqualified due to criminal contempt proceedings where trial judge was personally attacked by the defendant. The petitioner asked the public defender to file a motion to recuse the judge because of the high potential for judicial bias and the fact that the petitioner had already filed a pro se motion to recuse trial judge.

The public defender Jonathan Neil agreed to file the motion initially but at the following court date stated "I'm not going to put my law license on the line by filing it you can go pro se then file it."The fact that clearly established federal law and the supreme court mandated that the judge recuse or at the very lest proceed no further in the proceeding while the matter is pending.

The trial judge reasonable knew that motions to recuse had been filed pro se and that any reasonable attorney would follow up a client's motion concerning judicial bias. Especially when the trial judge stated in open court and on the record that a motion to recuse must be filed by the attorney. The refusal to address the issue of bias was a **fourteenth amendment due process violation. The United States Supreme Court mandates** trial judges certify their

disqualification when criminal contempt proceedings involve disrespect or criticism of the trial judge.

The petitioner objected to the public defender's office representing the petitioner on the record and did not waive the right to conflict free counsel. The record will reflect that the petitioner has tried diligently to pursue and develop the claim of judicial bias and that the judge was disqualified in the district state courts. (See pro se motion to recuse, evidentiary hearing request) all attempts to develop the claim through trial transcripts were denied by the state courts.

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c)    **Direct Appeal Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes          ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes          ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on you motion or petition?    ☐ Yes          ☒ No

(4) Did you appeal from the denial of your motion or petition?          ☐ Yes          ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?          ☐ Yes          ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Exhausted through Direct Appeal.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground Three: Direct Appeal.

**GROUND FOUR: Ineffective Assistance of counsel**
Public defender's office **deprived petitioner of his constitutional rights under the fifth,**

**sixth, and fourteenth amendments** by

(A)Failing to expressly object to the trial courts declaration of a mistrial and/or erroneously

advising the petitioner not to object to the mistrial on the states motion.

(B)Failing to file motion to recuse when trial judge was clearly disqualified depriving petitioner

of **constitutional amendments six and fourteen right to effective assistance of counsel and**

**the right to due process.**

(C)Failing to investigate or communicate with petitioner creating a complete breakdown in

communication and/or breakdown in the adversarial testing process depriving petitioner of

**constitutional amendments five, six and fourteen.**

(D)Failing to poll the jury when there was a dispute about a fundamental element through jury

question that ultimately would decide the aggravating factor of the petitioner's charges depriving petitioner of **constitutional amendments six and fourteen.**

(E)Waiving petitioner's rights to be present during the entire trial depriving petitioner of right to confrontation and/or opportunity to be heard and object in person and on record.

The waiver of the petitioners right to be present when the jury question was answered **cannot be justified by the public defender's office as harmless beyond a reasonable doubt.**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim):
Facts set forth in ground four ineffective assistance of counsel are as follows.

The plain and obvious errors made by the public defender's office clearly demonstrate both deficient performance and prejudice to the petitioner. T**he sixth amendment right**

**of effective assistance of counsel guarantees a defendant the right to effective assistance of trial counsel.**

**American Bar Association -Cannons of professional and judicial ethics cannon 15;**

"The lawyer owes entire devotion to the interest of the client. Warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability ,to the end that nothing be taken or withheld from him ,save by rules of the law .Legally applied ,No fear of judicial disfavor or public unpopularity should refrain him from the full discharge of his duties .In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by law of the land, and he may expect his lawyer to assert every such remedy or defense.

The public defender's office performed below the standard of **ABA cannon 15.**

Deficient performance from the public defender's office undermined the outcome of the trial and affected the petitioners fifth, sixth, and fourteenth amendment right.

Lack of investigation and/or communication and a failure to expose the state's case to adversarial testing, allowed the scales of justice to be tipped in favor of the state of Oklahoma.

The fact that the state of Oklahoma was allowed a second bite at the apple under false pretense and the assumption that state prosecutors had covid 19 when there was a valid available rapid covid test that would have made the states motion for mistrial moot, the trial courts dismissal of state prosecutor ex parte was an arbitrary ruling and clearly unreasonable.

It becomes obvious why a covid test was never took by states prosecutors and less drastic available alternatives were never explored violating clearly established federal law rule 26.3 of federal procedure concerning mistrials.

The state used the covid thing to induce and provoke the public defender's office into an agreement to join the motion for a mistrial. If less drastic available alternatives were explored the obvious remedy would have been to have the states prosecutors take a rapid covid test, the same rapid covid test the states attorneys burks witness took that caused the mistrial to begin with.

The states intent was to subvert the protections afforded the **double jeopardy clause** by provoking the public defender's office to join the motion for mistrial by using the covid issue and making it seem like there was an urgent risk to citizens when there really was no risk at all.

The states attorneys played on the covid pandemic and used it to induce an agreement from the public defender's office.

The state's evidence was insufficient at the first trial due to several witnesses being unavailable.

The ex parte communications with the trial judge and the ex parte dismissal of the jury outside the presence of the defendant and off the record **(only the trial judge was present when the jury was dismissed the defendant nor either of the attorneys were present when the jury** was dismissed everything was done ex parte) was **a violation of the petitioners fourteenth amendment due process rights.**

**The fact that the mistrial was on the states motion and benefitted the sole interest of the state's prosecutors to the detriment of the petitioner, the brief five-minute hearing (held 9-15-21) to declare a mistrial were at no point was the defendant's rights against being twice put in jeopardy protected.**

**The states prosecutors cannot meet manifest necessity under strict scrutiny**

without a positive covid test.

A covid test would have dissolved the matter concerning state prosecutors possibly

having covid, the obvious alternative the states prosecutors did not take before moving

for a mistrial.

**The United States Supreme court has mandated a strict scrutiny to meet manifest necessity standards when basis for mistrial is unavailability of critical prosecution**

**evidence or there is reason to believe that prosecutor is using the superior resources of the state to harass or achieve a tactical advantage over accused.**

**The fact that there was a less drastic available alternative by way of a simple covid test, the fact that prosecutors did not have covid and could not expose citizens to a virus that they did not have provides a reasonable basis to believe prosecutors were using superior resources to achieve a tactical advantage over the accused.**

As a result of the courts erroneous grant of a mistrial, defendant had available a

double jeopardy defense to the states attempt to subject him to retrial.

No assertion of trial strategy can justify his omission. Counsels' failure to lodge

objection/former jeopardy motion or investigate available alternatives protecting and

preserving defendants constitutional fifth amendment rights can satisfy the deficiency prong of

Strickland.

The petitioner satisfies the prejudice prong by pointing to the fact but for counsels' deficient

performance the outcome of the trial would have been different.

Had defense counsel lodged objection and/or plead former jeopardy prior

to second trial on an **obvious and meritorious double jeopardy defense** there is no doubt the

outcome would have been different. Most likely there would not have been a second trial

because the states prosecutors did not have covid and an objection or exploration of available

alternatives would have brought that to the court's attention, at the very least had counsel

lodged objection or plead former jeopardy defendants claims of double jeopardy would have

been preserved. Counsels in action and erroneous advice to petitioner not to object to the

mistrial clear and plainly prejudiced the defendant. If the defendant should not have been retried the defendant should not have been convicted and the defendant is being held in violation of the laws and treaties of the United States.

The outcome of trial was vitally affected by counsels' dereliction.

The court of criminal appeals failed to apply clearly established federal law when reviewing the petitioner's double jeopardy claim.

**Rules of federal procedure Rule 26.3** states "before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects and to suggest alternatives."

The Oklahoma Court of Criminal Appeals finding that "rapid covid testing or consideration of less drastic alternative measures that might have mitigated the risk

is insufficient to overcome the courts presumptively reasonable decision to discharge the jury." **(See Oklahoma Court of Criminal Appeals opinion filed 7-3-24)**

This determination is unreasonable and contrary to clearly established federal law rule 26.3.

The Oklahoma Court of Criminal Appeals stipulates that the first three factors that determines whether jeopardy attached were evident, but the fourth and fifth are in dispute.

The five factors to determine if jeopardy attached to a jury trial are

1)the defendant must be put upon trial before a court of competent jurisdiction.

2)the indictment or information against the defendant must be sufficient to sustain a conviction

3)the jury must have been sworn to try the case

4)after being impaneled and sworn, the court must have unnecessarily discharged the jury

5)such discharge of the jury must have been without the consent of the defendant.

When these things concur, then the discharge of the jury constitutes jeopardy and operates as an acquittal of the defendant, and the defendant cannot again be placed on trial for the same offense.

The fourth factor to determine whether jeopardy attached to the petitioner's trial, can be demonstrated by the fact that there were less drastic available alternatives that would have remedied all covid concerns prosecutors presented to the trial court and the Oklahoma county public defender's office to obtain an agreement for a mistrial. The jury was unnecessarily discharged ex parte as well as state prosecutors. State prosecutor did not have covid 19 and had not tested positive at the time the jury was discharged so no compelling manifest necessity was valid or confirmed to satisfy discharge of a sworn jury.

5)The fifth factor can be demonstrated by the fact that the states attorneys induced and provoked the Oklahoma county public defender's office to join a motion for a mistrial

based solely off health and safety concerns that were not a threat or a reality to the defendant's jury trial and ex parte communications that resulted in the states attorneys being excused ex parte to go into quarantine without taking a covid test.

The fact that the states attorneys used health and safety concerns that did not suffice to obtain consent/agreement for mistrial while health and safety concerns could have been cured by state prosecutors taking a routine covid test before going into quarantine

shows lawfully the defendant's consent was no consent at all due to the state prosecutors provoking and misleading the Oklahoma county public defender's office into the agreement with health and safety concerns that were not valid concerns.

Unfortunately, at the expense of the defendants fifth amendment rights against double jeopardy the states prosecutors used health and safety concerns to gain consent for the mistrial and the defendant was subsequently retried for the same offenses.

Oklahoma county public defenders erroneously advised the petitioner not to object to the mistrial stating "an objection would make the judge mad."

The original prosecuting attorneys were not present at the hearing to declare a mistrial and the jury was discharged ex parte and outside the presence of the petitioner and the attorney's contrary to clearly established federal law.

This exposes the petitioner to prejudice since the record does not reflect or confirm the time the jury was actually discharged.

Upon review of whether the jury was discharged before declaration of the mistrial or after declaration of the mistrial the record is silent undermining the petitioners right to retain primary control over the course to be followed and the validity of the proceeding.

If the jury was discharged after declaration of the mistrial

then why did the trial judge not follow clearly established federal law and bring the jury back into the court room during the trial hearing and discharge the jury in front of the petitioner and the attorneys in open court and on the record according to federal procedure. No one at the trial hearing **held 9-15-21** had covid and if the jury was brought into the court room before the

hearing started (**see transcripts from 9-15-21** trial judge stated "I will bring the jury back in – I will excuse them for the day")why not bring them back in at the end of the trial and discharge the jury during the trial in front of the petitioner and the attorneys on record and in open court.

The discharge of the jury outside the presence of the defendant and the attorneys off record was unreasonable and prejudices the petitioner because there is no way to confirm for a fact the jury was discharged after the declaration of a mistrial because there is no record of the jury being present at the end of the trial (**see transcripts from 9-15-21**) besides the trial judge stating "I will bring the jury back in –I will excuse them for the day."

The jury was never physically present during the mistrial hearing or in court room when the petitioner's trial was concluded.

This fact alone shows the trial judge was the only person present when the jury was dismissed off record and since the petitioner is supposed to retain primary control over the course to be followed when a mistrial is declared this is a clear attempt to subvert federal procedure and undermine the outcome.

The defendant told public defenders he objected to the mistrial and was advised by Oklahoma county public defenders not to object to the mistrial.

Considering all the circumstances of the petitioner's case that prompted the mistrial the false narrative presented to the Oklahoma county public defender's office to provoke consent, ex parte communications between trial judge and state prosecutors about substantive matters were state prosecutors told the trial judge "there would not be an objection by the defense to the

mistrial. "Also dismissing original state prosecutors ex parte to go into quarantine without taking covid test confirmed and supported by the record of the proceeding had **on 9-15-21.**

Actions taken that clearly prejudice the petitioner creates a reasonable probability that consent for mistrial was unlawful and provoked through false narrative presented by state prosecutors.

The public defender's office failed to file a motion to recuse and/or disqualify

Not because of strategic decision, but because public defender Jonathan Neal did not want to put his law license on the line. It is unreasonable for public defender Jonathan Neal to assume he would be putting his law license on the line if he filed a motion to recuse. Jonathan Neal never told the petitioner why he would be putting his law license on the line if he filed a motion to recuse.

The statement made by Jonathan Neal and the failure to file the motion to recuse, when public defender's office knew of the contempt citation and the potential for judicial bias due to disrespect and criticism of the trial judge and the high probability that the average judge would not be able to remain neutral in the matter after being told fuck you and called a cocksucker by a defendant.

Public defender Jonathan Neal was conflicted.

The defendant was entitled to a fair trial from an unbiased court.

Public defender Jonathan Neal put his personal interests to not put his law license on the line before the interests of the client. The fact that the trial judge would have been required to recuse pursuant clearly established federal law when a motion to disqualify is timely filed and the United States supreme courts mandate that trial judges affected by contempt if said

contempt charge involves disrespect or criticism of trial judge, is thereby disqualified demonstrates defendant was prejudiced by omission to file motion to recuse and denied due process of law as well as effective assistance of counsel.

The Public defender's office provided ineffective assistance of counsel and deprived the petitioner of substantial rights by waiving petitioners right to be present during the entire trial. The fact that the public defenders waived the petitioner's presence and took fundamental steps during critical stages of the trial that fatally prejudiced the petitioner by denying petitioner the right confrontation and opportunities to be heard and defend in person. The right to evaluate and respond to fundamental matters that arose during the trial that ultimely would decide the aggravating factor of the charges and affect the jury's verdict. The jury presented the court with a very important question during deliberations. The question presented to the court stated "Does a gun or imitation gun have to be present to satisfy #8 on instructions or does it just have to real in the mind of the victim." Number eight is an element of the crime of robbery that the states attorney did not prove beyond a reasonable doubt as to all five robbery charges. The state did not prove beyond there was a gun present at all five robbery charges. Obviously, the jury was contemplating the fact that the states attorneys did not prove beyond a reasonable doubt a gun was present at all five robberies,' otherwise the jury would not have presented this particular question to the court. The jury was unclear on a fundamental element of the robbery charges and the response to the jury question would clearly have an effect on the jury's verdict. The trial court refused to address the jury's question and instructed the jury to keep deliberating through a note sent through the court's bailiff. The response to the jury question was contrary to clearly established federal law and the supreme courts of the United States mandate that any

communication with the jury during deliberations should be made in open court in the presence of the defendant and the defendants attorneys.

The fact that the public defenders waived the defendant's presence and agreed to the response given to the jury without notifying the defendant until after the jury returned the verdict ten minutes after the trial courts response to the jury question, deprived petitioner from the right to be heard and lodge objection to response.

Given the probative value of the jury question any competent reasonable attorney would have demand a more elaborate response to the jury's question, and notified the defendant prior to agreeing to the response. It cannot be said for a certainty the course of action taken by the public defender's office concerning the jury question was harmless beyond a reasonable doubt, and did not prejudice the defendant. A fundamental element of the crime of robbery was unclear to the jury when the verdict was returned ten minutes after receiving the response to the jury question. This is clearly plain and obvious error. The petitioner objected on the record to the public defender's office representing the petitioner at jury trial due to the conflict of interest prior to the beginning of the first trial. One significant conflict mentioned was a complete breakdown in communication that manifested during critical stages of the trial. The defendant wanted the jury polled for obvious reasons after the verdict was returned ten minutes after presenting the court with a fundamental question and the failure to explain the 8th element of the crime of Robbery with a firearm. The public defender told the judge that the defense did not want the jury polled when the 8th element of the crime of Robbery with a firearm was obviously unclear to the jury.

There was no strategic reason for the public defender's office not to have the jury polled but there clearly was a reason to have the jury polled due to the question they presented.

Having the jury polled reasonable would have brought out the jury question if the poll was not unanimous as to all five counts. The public defender also agreed to a mistrial and told state prosecutors there would not be an objection by the defense prior to speaking with the defendant about the matter. If the defendant was brought into open court and allowed to evaluate and object to the courts reply to the jury question, it is a reasonable high possibility that the jury would have chosen the lesser included offense. The procedure followed affected the defendant's substantial rights to be present and the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty.

The defendant never waived the conflicts and the record does not reflect a valid knowing, intelligent or voluntary waiver of conflicts. Clearly established federal law mandates a valid waiver of conflicts on the record if counsel is conflicted. This waiver does not appear on the trial record yet the conflicted public defender's office was still allowed to represent the defendant at trial. The defendant and the public defender's office objected to the public defender's office representing the defendant at trial through motion to appoint conflict counsel **filed 9-9-21**. The error was structural and affected the framework of the trial, structural errors require reversal on appeal review.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☒ Yes    ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on you motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Exhausted through Direct Appeal.

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: Direct Appeal

13.    Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?        ☒ Yes           ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which

ground or grounds have not been presented, and state your reasons for not presenting them:

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition? ☐ Yes        ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

of any court opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging? ☐ Yes        ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

raised.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing: Oklahoma county public defender Nicole Burns

(b) 320 Robert S Kerr Ave Ste 611

(c) Oklahom City ,Ok 73102

(d) At arraignment and plea: None

(e) At trial: Oklahoma County Public Defenders Jonathan Neal and Ryan Loewenstern

(f) 320 Robert S Kerr Ave Ste 611

(g) Oklahoma City,Ok 73102

(h) At sentencing: Oklahoma county public defender Jonathan Neal

(i) 320 Robert S Kerr Ave Ste 611

(j) Oklahoma City,Ok 73102

AO 241 (1/50) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254                     Page 43 of 45

(k) On appeal: Dedrick Lemont Hickey Pro Se

(l) Allen Gamble Corectional Center

(m) 6888 E.133rd

(n) Holdenville, Ok,74848

(o) In any post-conviction proceeding:None

(p) On appeal from any ruling against you in a post-conviction proceeding: None

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging: ☐ Yes    ☒ No

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


(b)  Give the date the other sentence was imposed:

(c)  Give the length of the other sentence:

(d)  Have you filed, or do you plan to file, and petition that challenges the judgment or sentence to be served in the

future?    ☐ Yes    ☒ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration
of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the
Constitution or laws of the United States is removed, if the applicant was prevented from filing by
such state action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme Court and made retroactively applicable to
cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been
discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:Reverse and Remand State court conviction and order petitioners Release and

or any other relief to which petitioner may be entitled.

_Dedrick Nickery_     5-29-25

Signature of Petitioner or Attorney (if any)

## VERIFICATION

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on  (month, day, year).

Executed (signed) on ?? (date).     5-29-25

_Dedrick Hinkley_     5-29-25

Signature of Petitioner or Authorized
Person Under 28 U.S.C. § 2242

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.