## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Name (under which you were convicted):Dedrick L Hickey | Docket or Case No.:CF-2018-983 |
| Place of Confinement : <br><br> Allen Gamble Correctional Center | Prisoner No.:404004 |
| Petitioner (include the name under which you were convicted)Dedrick Lemont Hickey | Respondent (authorized person having custody of petitioner)Michael Miller |

v.

The Attorney General of the State of Oklahoma
Gentner F. Drummond

**PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254**

## Table of contents

Page 1…………………………………………………………....... **Memorandum of Law**

Page 1………………………………………… Plain Error -Bias Judge Disqualified

Page 3……………………………………………. Plain Error – Double Jeopardy

Page 14………………………………………...…….Plain Error – Conflict of Interest

Page 22…………………………… Plain Error – Ineffective assistance of Trial counsel

Page 29…………………………………………………. Cause and Prejudice

Page 29……………………………………………………………. Cause

Page 31…………………………………………………………...……. Prejudice

Page 31 …………………………………………………………. Abuse of Discretion

## Table of Authority's

Page 4.................................................................5 U.S.C.A. § 557 (D)1(A)

Page 1,2 ...............................................................28 U.S.C.A. § 144

Page 7,8,9.............................................................28 U.S.C.A § 2254 (D)(2)

Page 1,2...............................................................28 U.S.C.A § 455 (A)(B)1

Page 2,31.............................................................Fed R Crim Proc Rule42(B)4

Page 33............................................... Fed R Crim Proc Rule 26.3

Page 10,11,33.........................................     U.S. Constitutional amendment 5

Page 24,25.............................................U.S. Constitutional Amendment 6

Page 8,33.............................................U.S. Constitutional Amendment 14

Page 2.................................Caperton v. A.T. Massey Coal Co Inc 556 U.S. 868 (2009)

Page 18,19,20............................................Christeson v. Roper 574 U.S. 373 (2015)

Page 3,31.............................................Cook v. U.S. 267 U.S. 517 (1925)

Page 25,26,29,30............................................Cuyler v. Sullivan 446 U.S. 335 (1980)

Page 27.............................................Earnest v. Dorsey 87 F.3d 1123 (1996)

Page 15,16.............................................Holloway v. Arkansas 435 U.S. 475 (1975)

Page 32.............................................IN RE B.W. 293 P.3d 986 (2012)

Page 31,32.........................................IN RE Guardianship of R.T. 278 P.3d 1063 (2012)

Page 32..................................................IN RE H.R.T. 362 P.3d 666 (2013)

Page 32..................................................IN RE J.H. 213 P.3d 545 (2008)

Page 3.............................................IN RE Murchison 349 U.S 133,136 (1955)

Page 8.......................................................... Jones v. Hess 681 F.2d 688 (1982)

Page 28,29.............................................Kimmelman v. Morrison 477 U.S. 365 (1986)

Page 3,31........................................... Mayberry v. Pennsylvania 400 U.S. 455 (1971)

Page 27,28................................................. McCoy v. Louisiana 138 s.ct 1500 (2018)

Page 15,16,17................................................. Mickens v. Taylor 535 U.S. 162 (2002)

Page 10.................................................... Oregon v. Kennedy 456 U.S. 667 (1982)

Page 28.................................................................Rogers v. U.S. 422 U.S. 35 (1975)

Page 2,3.......................................................... Shelton v. Nunn 2022 WL 17548600

Page 17,24,25................................Strickland v. Washington 466 U.S. 668 (1984)

Page 28,29................................................. Von Moltke v. Gillies 332 U.S. 708 (1948)

Page 10,11................................................. Walck v. Edmondson 472 F.3d 1227 (2007)

Page 12,13,14..................................... Washington v. Jarvis 307 supp 2d 794 (2004)

Page 26,27........................................... Weaver v. Massachusetts 582 U.S. 286 (2017)

Page 20...............................................................Will v. Michigan 491 U.S. 58 (1989)

Page 2................................................... Williams v. Pennsylvania 579 U.S. 1 (2016)

**Page 11,12**………………………………………...**U.S. v. Dennison 626 F supp 3d 189 (2022)**

**Page 10,29**…………………………………………… **U.S. v. Jorn 400 U.S. 470 (1971)**

**Page 18**……………………………………………**U.S. v. Lott 310 F.3d 1231 (2002)**

**Page 7**………………………………………**U.S. v. Martinez 667 F.2d 886 (1981)**

## Memorandum of law

### Plain Error -Bias Judge Disqualified

It was plain and obvious error for trial judge to continue to preside over the defendant's trial when motions to disqualify due to judicial bias were pending.

### 28 U.S.C.A § 144

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the pro ceding is to be heard, or good cause shall be shown for failure to file it with in such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

It was plain and obvious error for trial judge to refuse to rule on defendants motion to recuse/disqualify or address the issue of judicial bias due to direct contempt citation that clearly disqualified the trial judge.

It was plain and obvious error for trial judge who held defendant in direct contempt of court after being criticized and disrespected in open court with humiliating insults by defendant and average trial judge in judges position was not likely to remain neutral, refused to certify his disqualification.

### 28 U.S.C.A. § 455

(A)Any justice or judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonable be questioned.

Plain error affected the defendant's substantial rights and undermined the fairness, integrity, and public reputation of judicial proceedings.

Plain error by trial judge affected the defendant's substantial rights violating **28 U.S.C.A § 455**

**28 U.S.C. A § 144 and  Federal Rule of Criminal Procedure Rule 42 B Note to subdivision (B)4**

Depriving defendant of constitutional amendment fourteen due process clause and the right to a fair and impartial tribunal.

**Williams v. Pennsylvania 579 U.S. 1 (2016)**

**Citing Williams** "A judge's unconstitutional failure to recuse, in violation of due process, constitutes structural error not subject to harmless error review, even if the judge in question did not cast a deciding vote on a multimember court."

**Caperton V.A.T Massey Coal Co INC 556 U.S. 868 (2009)**

**Citing Caperton** "In deciding whether probability of actual bias on part of trial judge is too high to be constitutionally tolerable, courts inquiry is objective one, that asks not whether judge is actually, subjectively bias, but whether average judge in judges position is likely to be neutral, or whether there is unconstitutional potential for bias."

**Shelton v Nunn 2022 WL 17548600**

**Citing Shelton** "Due process requires a fair trial free of actual bias" **IN RE Murchison, 349 U.S. 133,136 (1955)**

**Mayberry v Pennsylvania 400 U.S. 455 (1971)**

**Citing Mayberry** "By reason of due process clause of the fourteenth amendment a defendant in criminal contempt proceeding s should be given public trial before judge other than one reviled by contemnor.U.S.C.A const.Amend 14

**Cook v. U.S 267 U.S. 517 (1925)**

**Citing Cook** "Judge on whom personal attack has been made may properly invite other judge to preside at hearing."

A motion to recuse the trial judge was **filed 5-5-21** on the trial record by the defendant pro se when public defender Nicole Burns refused to file the motion when the petitioner asked her to.

### Plain Error -Double Jeopardy

It was plain and obvious error for the states prosecutors and trial judge to have ex parte communications about substantive matters that facilitated a mistrial in the petitioner's case.

It was plain and obvious error for the trial judge to declare a mistrial without considering less drastic obvious alternatives.

It was plain and obvious error for the trial judge to excuse the original states prosecutors ex parte for the remainder of the trial without scrupulous exercise of judicial discretion, particularly a covid test that was positive confirming a plausible risk did exist and ends of public justice would be defeated if the jury trial continued.

mistrial severely prejudiced the petitioner .The only way state prosecutors could pose a

risk to health and safety concerns sufficient enough to satisfy the United States Supreme

Courts mandate of manifest necessity would have been state prosecutors testing positive

for covid -19 . If state prosecutors did not have covid -19 there was never a risk to health

and safety concerns like state prosecutors presented to the public defender's office and

trial court to secure a agreement for a mistrial. The trial courts ex parte ruling was

arbitrary and no plausible compelling covid -19 risk existed that would satisfy the United

States Supreme Courts mandate of manifest necessity when the petitioner's trial was

aborted. It's an undisputed fact that state prosecutors were vaccinated and tested negative

for covid-19 when the petitioner's trial was deleted. State prosecutors went into

quarantine without taking a covid test but tested while in quarantine and was found to be

covid -19 negative. It is not a coincidence that state prosecutors were excused ex parte by

the trial court to go into quarantine without taking a rapid covid test. The rapid covid test

was available at the time the state prosecutors was excused ex parte by the trial court .The

states burks witness took a rapid covid test and found out he had covid -19 the same  day

the state prosecutors was excused ex parte by the trial court to go into quarantine without

taking a rapid covid test .The trial court allowed  state prosecutors to compel the court ex

parte to excuse them from the remainder of the jury trial to go into quarantine without

taking a covid test.The policy at the time the petitioners trial was aborted was everyone

was supposed to take a rapid covid test prior to going into the courtroom. This policy can

be verified through CDC and courtroom policy's during covid -19 pandemic. The

petitioner was taking a rapid covid-19 test every morning prior to being brought to the

courtroom during trial. This rapid covid-19 testing policy was being followed during the petitioner's trial. If trial court would have followed policy and procedure at the time the trial court excused state prosecutors ex parte then the mistrial motion filed by state prosecutors would have been moot and petitioners' constitutional rights would have not been violated and petitioner would not have been subsequently retried for the same offenses. The fact that the misrepresentation of covid -19 and the risk that state prosecutors posed to citizens was a false narrative used to secure an agreement for a mistrial filed on the state prosecutors motion, shows that consent was obtained through bad faith conduct between state prosecutor and the trial court.

see transcripts **from 9-15-21**. These ex parte communications between trial judge and state prosecutors about substantive matters that undermined the outcome of the trial violates the petitioners **fifth, sixth,** and **fourteenth amendment constitutional rights**. The transcripts from 9-15-21(Mistrial Hearing) begins with the trial judge pleading the state's case about the covid issue and explaining on the record that the court decided to excuse the states attorneys ex parte for the remainder of the jury trial without any actual finding of facts that covid risk was plausible. **Transcripts from 9-15-21 (mistrial hearing)** the states attorney says "within some short proximity between the test and the phone call from **Ms. Steadman** the witness was confirmed positive for covid. The only covid test that will give you results in a short proximity of time is a rapid covid test. The original covid test took several days to get results. Its clear from the trial transcript record that the states witness took a rapid covid test and was confirmed positive for covid -

19.The states attorneys does not dispute the fact that the states witness took a rapid covid test bias and prejudice infected the trial when states prosecutors were excused ex parte by the trial court to go into quarantine without a covid test validating that an actual risk to health and safety concerns did exist. The fact that the states attorneys did not have covid and took a covid test after the trial court declared a mistrial instead of prior, shows bad faith on the part of trial judge and state prosecutor motivated by ex parte communications and the intent to subvert the U.S. constitutions Double jeopardy Clause. **Transcripts from 10-13-21** confirm the states attorneys were having issues securing witnesses. **Transcripts from 9-14-21** will confirm when trial judge asked the states prosecutor if they had any more available witnesses, the state's prosecutor stated one more. **The states witness coordinator Sandy Steadman can confirm every witness the state was having issues securing for the first trial. Subpoenas and  records kept by the witness coordinator should be apart of the trial record .**Transcripts from the first trial were not made part of the original trial record only certain parts of the first trial were included. The trial record shows subpoenas were sent out but does not confirm what witnesses would be available for trial. The missing transcripts from the first trial and other missing material transcripts that were requested by the petitioner severely prejudiced the petitioner by denial of the full and complete trial record during perfecting of direct appeal. **Violating petitioners fifth and fourteenth amendment due process rights.** During the ex parte communications between the states prosecutor and the trial judge **the petitioner did not retain primary control over the course to be followed.** This is demonstrated by the agreement made with prosecuting attorneys to end the trial.

The agreement was made the evening prior to the hearing on **9-15-21**. (mistrial hearing) **Transcripts from 9-15-21** confirm agreement was made prior to the hearing **on 9-15-21**. The prosecuting attorney states 'I made the call to you, your honor, and you understood that we would be moving for a continuance in this matter and there would not be an objection by the defense'. According to the trial transcripts the agreement was made ex parte with the state's prosecutors inducing and provoking both the trial judge and the public defender's office by controlling all the ex parte communications between the trial judge and the public defender's office. Per trial transcripts **from 9-15-21** at no point during the ex parte communications did the trial judge reach out to or speak directly to the public defenders office to notify them of the ex parte communications between the court and prosecuting attorneys or get a response from the public defender's office or the petitioner directly before dismissing the prosecuting attorneys ex parte for the remainder of the trial and agreeing to declare a mistrial without considering less drastic available alternatives to the mistrial. The public defender's office told the states attorneys there would not be an objection by the defense before discussing the matter with the defendant. Ex parte communications between trial judge and state prosecutors about substantive matters that determine the outcome of trial are a violation of the **United States Constitutions Fifth Amendments Due Process Clause**. This also demonstrates the petitioner did not retain primary control over the course to be followed. On **9-15-21** the petitioner was told by the public defender's office that "there has been a mistrial in your case, one of the states witnesses tested positive for covid 19." The petitioner then notified the public defender that he objected to the mistrial .The public defender  then

told the petitioner " I would advise you not to object to the mistrial ." The public defender stated that an objection would make the judge mad."The petitioner then told the public defender that if the states attorneys called a mistrial they could not try the petitioner again for the offenses. The petitioner clearly made an attempt to assert his double jeopardy rights. The public defenders then told the petitioner that the state could try the petitioner again if a mistrial was decided, stating the trial process would start over from the beginning. The only reason the petitioner did not object on the record is because the public defenders office advised the petitioner not to object to the mistrial and stated that retrial was not barred by double jeopardy .Defense counsel deprived the petitioner of his constitutional rights under the fifth, sixth and fourteenth amendments by advising the petitioner not to object to a mistrial filed on the states motion failing to expressly object to the mistrial on the states motion ,and joining in the states motion for mistrial without investigating the facts or circumstances surrounding the mistrial or exposing the states case to adversarial testing .The record reflects the states attorneys induced the public defenders office to join the motion by misrepresenting a risk to health and safety concerns from covid exposure. The risk to health and safety concerns could have been remedied with a routine rapid covid test that would have revealed that vaccinated states attorneys did not have covid and did not pose a risk to health and safety concerns. However, this does not excuse the fact that the public defender's office did not investigate the facts surrounding the mistrial before advising the petitioner not to object and joining the states motion **depriving** petitioner of his constitutional safeguards and effective assistance.

8

The public defender's office did not mention the former jeopardy that had attached to the trial or consider less drastic available alternatives, ex parte communications were permitted by the public defender's office. The petitioner would gain nothing by joining the states motion and public defenders can not justify advising the petitioner not to object to a mistrial on the states motion by the mere fact that it would make the judge mad. Public Defenders failed to expose the states case to adversarial testing. This failure was a direct result and factor in why the petitioner was placed in double jeopardy, and subsequently retried for the same offenses. The facts of what was actually discussed in these ex parte communications between trial judge and state prosecutors will forever be between those two parties and erroneously the petitioner and the public defender's office were foreclosed from those facts due to prosecutorial misconduct and judicial bias.

It is clear from the trial transcripts **from 9-15-21** that the ex parte communications were substantive and did determine the outcome of the trial.

The states attorneys cannot argue beyond a reasonable doubt these ex parte communications did not prejudice the petitioner. They cannot argue the ex parte communications was done in good faith when neither the trial court nor the states attorneys mentioned the former jeopardy that attached to the trial or the obvious available alternative rapid covid test that if took by state prosecutors would have revealed state prosecutors did not have covid 19 and did not pose a risk to citizens making mistrial motion moot. The states attorney argument that covid 19 exposure is a manifest necessity to justify a mistrial rest solely on the fact that to continue the trial when states attorneys was exposed to covid presents a risk to all parties involved.

The argument fails for three reasons.

(1)The states attorneys were not the only people in the court room exposed to covid 19 by the states attorneys burks witness .everyone in the courtroom at the time the states burks witness testified was exposed to covid 19 the states witness was in the judges chambers interacting with court personnel and also came into the courtroom and took the stand right next to the trial judge and testified in open court.

The public defender's office cross examined the states burks witness in open court the entire courtroom had just as much contact or exposure to the states burks witness as the state's attorneys.

If the risk was sufficient to justify the states attorneys being excused to go into quarantine the entire courtroom should have been excused due to the alleged risk from covid exposure. **Conveniently the states attorneys were the only people in the courtroom excused ex parte by the trial judge to go into quarantine because of this alleged risk,** everyone in the court room had contact/exposure with the witness but state prosecutors were the only people in the courtroom the trial judge determined posed a risk. This is clearly an unreasonable determination people are exposed to covid 19 daily and will remain exposed until a cure is found or the virus is eliminated. If everyone went into quarantine every time someone came in contact with a person that tested positive for covid 19 without taking a covid test to confirm the presence of the virus then people would be going into quarantine just to find out they were covid 19 negative the whole time (example states attorneys).

The procedure followed by the trial judge and the states attorneys were contrary to the clearly established covid procedure at the time. Policy at the time called for states attorneys to get rapid covid tested before going into quarantine depending on test results if exposed to covid and quarantine was required only upon a positive covid test.

These procedures were put into place for a reason and deviating from policy and procedure seriously prejudiced the petitioner.

(2) Covid testing, rapid covid testing is the answer to covid exposure and the reason people do not require quarantine until test results confirm they are positive for covid 19 when exposed to the virus. Rapid covid testing was available and clearly established policy and procedure at the time the petitioner's case was declared a mistrial due to covid exposure that untimely did not affect or reach the states attorneys.

 (3)The states attorneys did not have covid 19 and the risk to health and safety concerns the states attorneys misrepresented to the Oklahoma county public defender's office and the trial court to get the public defenders office to join the states motion was premature and misleading.

The discharge of duties to investigate without due diligence inquiry into facts pertinent in determining if a significant risk to citizens actually did exist or if state prosecutors who initiated a motion for mistrial were trying provoke a mistrial with the intent to subvert the protections afforded by the United States constitutions **Double Jeopardy Clause** was an abuse of discretion that equaled a manifest constitutional error by the state trial court.

Manifest constitutional error put the petitioner in double jeopardy.

Contrary to clearly established federal law.

It was well known that rapid covid tests was available. It was also well known that states attorneys was having problems securing witnesses for the first trial when the states burks witness tested positive for covid 19 and become unavailable for the first trial.

Wherefore it became clearly unreasonable and prejudiced the petitioner when trial judge entertained ex parte communications with state prosecutors ex parte and excused state prosecutors ex parte from the trial prior to declaration of a mistrial, without a positive covid test or factual findings that state prosecutors did have covid and risk to public safety was plausible not just feasible.

 Its obvious trial judge declared mistrial to afford the prosecutor a more favorable opportunity to convict. The fact that six days prior to grant of mistrial on states motion trial judge denied defense motions for appointment of conflict counsel/continuance without proper inquiry or a factual finding or determination of the ruling.

## 28 U.S.C.A. § 2254 (D)(2)

Citing "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings."

The trial record demonstrates the state prosecutors case was strengthen significantly by the trial court dismissing the state prosecutors ex parte prior to declaration of the mistrial. Witnesses that were previously unavailable were tracked down and made available, the sneak preview into the public defender's office defenses and the opportunity to buttress weaknesses in the states own case all benefited the states prosecution.

Here are a few examples of how the state's case was strengthened by the mistrial.

James Hoagland witness that testified at preliminary hearing and at first trial but did not testify at second trial due to conflicting statements of identification that did not match the petitioner.

Ron Ison led detective on the robbery case but did not testify at either trial. This detective was a lead detective signed off on search warrants and had instrumental involvement in the investigation and the arrest of the petitioner but was never called to testify at either trial. (Officer suspected of misconduct)

Jerrick Thrasher witness that was never called due to being unavailable during first trial.

Ashley Stone witness that never testified at the first trial but was declared unavailable at the second trial and preliminary hearing transcripts were read at the second trial.

Fabiola Molina witness that never testified at preliminary hearing and did not testify at the petitioners first trial but testified at the second trial and could not make a positive identification of the petitioner.

Lawrence warees was scheduled to testify at first trial but did not testify at first trial, however the witness did testify at the second trial.

Eric Vincent states burks witness that tested positive for covid 19 by taking a rapid covid test and was the reason for the mistrial, did not testify at the first trial, but was available at the second trial and did testify for the state prosecutors.

Brittany Dabrney did not testify at either trial due to the witness being unavailable.

Thao Warme was a witness that was endorsed after the first trial and was not on the witness list at the first trial this mere fact shows the prosecution's case was strengthen by the mistrial and new witnesses and evidence was added to strengthen the state's case.

Leads online was an exhibit that was endorsed at the second trial and strengthened the states case at the second trial.

## Ground Two – Conflict of Interest

The petitioners constitutional sixth amendment right to conflict free counsel was violated by the trial judge.

(A)The public defender's office became bias towards the petitioner after petitioner filed a lawsuit against the office and public defender Nicole Burns.

Assignment of conflict counsel from the same office that the petitioner had a pending lawsuit against clearly **deprived** the petitioner of **the sixth amendment right to conflict free counsel.**

(B)A complete breakdown in communication between petitioner and the public defender's office

**deprived petitioner of the sixth amendment right to conflict free counsel.**

(C)Conflicts arose when counsel advanced interests that were not the petitioners best interest to the detriment of the petitioner **depriving petitioner of the sixth amendment right to conflict free counsel.**

(D)Trial judges' **failure to inquire into conflicts deprived the petitioner of the sixth amendment right to conflict free counsel.**

## Supporting Facts

Facts set fourth in ground two conflict of interest are as follows.

The trial judge failed to inquire into several known conflicts of interests contrary to the United States Supreme Courts mandate.

Initially the petitioner filed a federal lawsuit against public defender Nicole Burns, the petitioner's public defender at the time the lawsuit was filed. The United States Supreme Court has determined that a suit against a state official in its official capacity is not a suit against the official but rather a suit against the official's office. The lawsuit against public defender

Nicole Burns created a conflict and public defender Nicole Burns was removed from the petitioner's case. The trial court then appointed a new public defender from the same office that petitioner had a pending lawsuit against. The petitioner **objected** to this appointment on the record at a hearing **held on 6-2-21** to remove public defender Nicole Burns from the the petitioners case. Once the petitioner objected to this appointment of a different public defender from the same office that the conflict was coming from, the trial judge stated he was putting up a wall between the two public defenders from the same office and that the two public defender s was prohibited from discussing the petitioners case among each other.However, the wall had already been breached at the time the wall was put up by the trial court.

The two public defenders had already had discussions about the petitioner's case being in the same office the two public defenders continued to talk about the case among each other.

The second chair public defender Ryan Loewenstern who was also from the same public defender's office that the conflict was coming from and who was not at the hearing to

15

remove public defender Nicole burns when the trial judge put the wall up, told the petitioner that Nicole Burns the same public defender that the petitioner named in a federal lawsuit and that the trial judge put a wall up against told him and Jonathan Neil that Kathryn Phariss a witness for the states attorneys had showed up at preliminary hearing loaded on drugs. Public defender Ryan Loevvenstern was the second chair counsel at the petitioner's trial and was not at the **hearing on 6-2-21** when the trial judge put the wall up. The public defender was not aware he had confirmed that the wall put up by the trial judge to stop the conflict of interest had been breached by the two coworkers in the same office. **The duty of the trial court mandated by the United States supreme Court to inquire into potential conflicts of interests were not followed in the petitioner's case.** The conflict persisted when trial court put up the wall because

1)the lawsuit was still pending against the public defender's office at the time the petitioners case went to trial and public defenders could have been called as witnesses against petitioner in the pending lawsuit therefore creating a conflict of interests when a division of loyalties is apparent.

2)The issue of bias coming from the public defender's office towards the petitioner due to the pending lawsuit and allegations of ineffective assistance of counsel in the pending lawsuit.

3)the close relationship between the public defenders and the public defender's office the public defenders work for could clearly influence the way the public defenders defended the petitioner at trial.

4)The wall had already been breached at the time the court put the wall up.

5)A complete breakdown in communication between the petitioner and the public defender's office.

The pending lawsuit and allegations of ineffective assistance of counsel that cast doubt on the competency of the public defender's office affected the public defender's office performance and representation of the petitioner at trial.

This is demonstrated by the fact that the second chair Ryan Loewenstern had never tried a case before being assigned to the petitioner's case. The lead public defender Jonathan Neil also had very little trial experience trying cases as well.

Fairly new less experienced public defenders were assigned to the petitioner's case after the petitioner filed the lawsuit against the public defender's office.

The lack of experience and being basically new to the job clearly affected the public defenders office performance and representation of the petitioner.

**On 9-9-21** the petitioners jury trial call docket, Jonathan Neil filed a motion for a continuance And/or appointment of conflict counsel. The motion states "the original counsel on the case Nicole Burns was sued by the defendant hickey in federal court, Jonathan Neil was given the case as substitute counsel **effective 6-2-21** via this court. Mr. Hickey contends that this is an improper and impossible to cure conflict despite judge's admonishment of counsel to effect an iron wall regarding this case between new counsel and former counsel Burns."

Public Defender Jonathan Neil also stated "requiring this matter to proceed as currently scheduled **on 9-13-21** would prejudice defendant and severely impair his ability to raise anadequate defense at trial due to his lack of communication with his defense attorney."

17

The trial judge denied the motion without proper inquiry or finding of facts on the ruling. If trial judge would have followed the United States Supreme Courts mandate to inquire into potential conflict s of interests, he would have discovered that Nicole Burns and the new public defender had already discussed the case and that the wall the court put up was insufficient. The appellate court considers four factors when reviewing a district courts denial of a motion to substitute counsel 1) Whether the defendants request was timely, the defendants request was **filed 9-9-21** call docket before the trial started. This was the first opportunity public defender Jonathan Neil had to address the conflict after being assigned the defendant case.2) If district court adequately inquired into the reasons for making the motion, The district court did not inquire into the reasons for the motion and denied the motion **On 9-9-21** without any finding of facts on the ruling.3)If the defendant attorney conflict was so great that it led to a total lack of communication Precluding an adequate defense. The defendant only talked with the public defender once before the first trial started. The motion filed by public defender Jonathan Neil for continuance and/or Appointment of conflict counsel confirms the lack of communication between the petitioner and public defender. **Transcripts from 9-13-21 page 6 Tr 10-12.** Jonathan Neil resubmitted the motion at the beginning of the trial on the bases of lack of communication with the petitioner about the case. The resubmitted motion was also denied. The fact that public defenders joined a motion for a mistrial on the state's attorneys' motion without any discussions with the petitioner before making determinative steps, shows a total lack of communication during a critical stage of the trial process. Appeals courts have held that counsel has an actual conflict of interest

for the purposes of the **sixth amendment right to counsel,** when forced to make choices advancing other interest to the detriment of his client. Counsels' decision to join a motion for a mistrial filed by the state without talking with the petitioner prior to doing so was a factor that lead to the detriment of the petitioner and advanced the interests of state prosecutors.

4)The defendant substantially and unreasonable contributed to the breakdown in communication.

There was a breakdown in communication but the defendant did not contribute to it. The Supreme Court of The United States has held that legal assistance which is ineffective in preserving fairness of trial does not satisfy the mandate of the sixth amendment. The proper waiver of right to conflict free counsel should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear on the record.

No were in the trial record does the petitioner knowingly intelligently or voluntarily waive

the right to conflict free counsel. It is confirmed in the record that petitioner and public defenders' office objected to the appointment of public defenders due to several conflicts of interest.

**See transcripts from 6-2-21and motion for continuance and/or appointment of conflict counsel filed 9-9-21).**

**Ground Three – Bias Trial Judge Disqualified**

The trial judge violated the petitioner's constitutional rights under the fourteenth

amendments due process clause.

(A)The trial judge failed to rule on a motion to recuse and/or address the issue of judicial

bias

towards the petitioner. Contrary to clearly established federal law **28 U.S.C.A. & 144**

**and 28 U.S.C.A. § 455 (A)(B)1**

(B)The Trial judge failed to follow **federal rule of criminal procedure Rule 42 (B)4**

direct contempt procedures by not certifying his disqualification.

Direct contempt citation involving criticism and disrespect of trial judge prohibited the

judge from proceeding any further in the matter.

### Supporting Facts

The trial judge was disqualified from trying the petitioner's case due to the high potential

for judicial bias in violation of the fourteenth amendment.

The petitioner requested to go pro se during petitioner's jury trial. During a feretta

hearing held on 1-22-21 the petitioner was denied the right o go pro se and to present a

self-made defense.

The trial judge stated the petitioner's reasons for wanting to represent himself were not

good enough and denied the petitioner's request. The petitioner became frustrated and

stated fuck you cocksucker to the judge and started criticizing the judge. The judge then

held the petitioner in contempt of court starting off with 3 months and running the

contempt citation up to one year from going back and forth with petitioner.

The petitioner later requested the judge recuse himself and filed in camera request pro se.

The trial judge refused to address the matter of judicial bias and told the petitioner the motion to recuse had to filed by the public defender.

The trial judge stated on the record at the hearing held 6-22-21 that the motion to recuse must be filed by the attorney. The petitioner told the public defender that the judge was disqualified due to criminal contempt proceedings where trial judge was personally attacked by the defendant. The petitioner asked the public defender to file a motion to recuse the judge because of the high potential for judicial bias and the fact that the petitioner had already filed a pro se motion to recuse trial judge.

The public defender Jonathan Neil agreed to file the motion initially but at the following court date stated "I'm not going to put my law license on the line by filing it you can go pro se then file it."The fact that clearly established federal law and the supreme court mandated that the judge recuse or at the very lest proceed no further in the proceeding while the matter is pending.

The trial judge reasonable knew that motions to recuse had been filed pro se and that any reasonable attorney would follow up a client's motion concerning judicial bias. Especially when the trial judge stated in open court and on the record that a motion to recuse must be filed by the attorney. The refusal to address the issue of bias was a **fourteenth amendment due process violation. The United States Supreme Court mandates** trial judges certify their disqualification when criminal contempt proceedings involve disrespect or criticism of the trial judge.

The petitioner objected to the public defender's office representing the petitioner on the record did not waive the right to conflict free counsel. The record will reflect that the

petitioner has tried diligently to pursue and develop the claim of judicial bias and that the judge was disqualified in the district state courts. (See pro se motion to recuse, evidentiary hearing request) all attempts to develop the claim through trial transcripts were denied by the state courts.

**Ground Four Ineffective Assistance of Trial Counsel**

Public defender's office **deprived petitioner of his constitutional rights under the fifth, sixth, and fourteenth amendments** by

(A)Failing to expressly object to the trial courts declaration of a mistrial and/or erroneously advising the petitioner not to object to the mistrial on the states motion.

(B)Failing to file motion to recuse when trial judge was clearly disqualified depriving petitioner of **constitutional amendments six and fourteen right to effective assistance of counsel and the right to due process.**

(C)Failing to investigate or communicate with petitioner creating a complete breakdown in communication and/or breakdown in the adversarial testing process depriving petitioner of **constitutional amendments five, six and fourteen.**

(D)Failing to poll the jury when there was a dispute about a fundamental element through jury question that ultimately would decide the aggravating factor of the petitioner's charges depriving petitioner of **constitutional amendments six and fourteen.**

(E)Waiving petitioner's rights to be present during the entire trial depriving petitioner of right to confrontation and/or opportunity to be heard and object in person and on record.

The waiver of the petitioners right to be present when the jury question was answered **cannot be justified by the public defender's office as harmless beyond a reasonable doubt.**

### Supporting Facts

Facts set forth in ground four ineffective assistance of counsel are as follows.

The plain and obvious errors made by the public defender's office clearly demonstrate both deficient performance and prejudice to the petitioner. **The sixth amendment right of effective assistance of counsel guarantees a defendant the right to effective assistance of trial counsel.**

**American Bar Association -Cannons of professional and judicial ethics cannon 15;**

"The lawyer owes entire devotion to the interest of the client. Warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability ,to the end that nothing be taken or withheld from him ,save by rules of the law .Legally applied ,No fear of judicial disfavor or public unpopularity should refrain him from the full discharge of his duties .In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by law of the land, and he may expect his lawyer to assert every such remedy or defense.

The public defender's office performed below the standard of **ABA cannon 15.**

Deficient performance from the public defender's office undermined the outcome of the trial and affected the petitioners fifth, sixth, and fourteenth amendment right.

Lack of investigation and/or communication and a failure to expose the state's case to adversarial testing, allowed the scales of justice to be tipped in favor of the state of Oklahoma.

The fact that the state of Oklahoma was allowed a second bite at the apple under false pretense and the assumption that state prosecutors had covid 19 when there was a valid available rapid covid test that would have made the states motion for mistrial moot, the trial courts dismissal of state prosecutor ex parte was an arbitrary ruling and clearly unreasonable.

It becomes obvious why a covid test was never took by states prosecutors and less drastic available alternatives were never explored violating clearly established federal law rule 26.3 of federal procedure concerning mistrials.

The state used the covid thing to induce and provoke the public defender's office into an agreement to join the motion for a mistrial. If less drastic available alternatives were explored the obvious remedy would have been to have the states prosecutors take a rapid covid test, the same rapid covid test the states attorneys burks witness took that caused the mistrial to begin with.

The states intent was to subvert the protections afforded the **double jeopardy clause** by provoking the public defender's office to join the motion for mistrial by using the covid issue and making it seem like there was an urgent risk to citizens when there really was no risk at all. The states attorneys played on the covid pandemic and used it to induce an agreement from the public defender's office.

The state's evidence was insufficient at the first trial due to several witnesses being unavailable.

The ex parte communications with the trial judge and the ex parte dismissal of the jury outside the presence of the defendant and off the record (**only the trial judge was present when the jury was dismissed the defendant nor either of the attorneys were present when the jury was dismissed everything was done ex parte) was a violation of the petitioners fourteenth amendment due process rights.**

**The fact that the mistrial was on the states motion and benefitted the sole interest of the state's prosecutors to the detriment of the petitioner, the brief five-minute hearing (held 9-15-21) to declare a mistrial were at no point was the defendant's rights against being twice put in jeopardy protected.**

**The states prosecutors cannot meet manifest necessity under strict scrutiny** without a positive covid test.

A covid test would have dissolved the matter concerning state prosecutors possibly having covid, the obvious alternative the states prosecutors did not take before moving for a mistrial.

**The United States Supreme court has mandated a strict scrutiny to meet manifest necessity standards when basis for mistrial is unavailability of critical prosecution evidence or there is reason to believe that prosecutor is using the superior resources of the state to harass or achieve a tactical advantage over accused.**

**The fact that there was a less drastic available alternative by way of a simple covid test, the fact that prosecutors did not have covid and could not expose citizens to a**

**virus that they did not have provides a reasonable basis to believe prosecutors were using superior resources to achieve a tactical advantage over the accused.**

As a result of the courts erroneous grant of a mistrial, defendant had available a double jeopardy defense to the states attempt to subject him to retrial.

No assertion of trial strategy can justify his omission. Counsels' failure to lodge objection/former jeopardy motion or investigate available alternatives protecting and preserving defendants constitutional fifth amendment rights can satisfy the deficiency prong of Strickland.

The petitioner satisfies the prejudice prong by pointing to the fact but for counsels' deficient performance the outcome of the trial would have been different.

Had defense counsel lodged objection and/or plead former jeopardy prior to second trial on an **obvious and meritorious double jeopardy defense** there is no doubt the outcome would have been different. Most likely there would not have been a second trial because the states prosecutors did not have covid and an objection or exploration of available alternatives would have brought that to the court's attention, at the very least had counsel lodged objection or plead former jeopardy defendants claims of double jeopardy would have been preserved. Counsels in action and erroneous advice to petitioner not to object to the mistrial clear and plainly prejudiced the defendant. If the defendant should not have been retried the defendant should not have been convicted and the defendant is being held in violation of the laws and treaties of the United States.

The outcome of trial was vitally affected by counsels' dereliction.

The court of criminal appeals failed to apply clearly established federal law when reviewing the petitioner's double jeopardy claim.

**Rules of federal procedure Rule 26.3** states "before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects and to suggest alternatives."

The Oklahoma Court of Criminal Appeals finding that "rapid covid testing or consideration of less drastic alternative measures that might have mitigated the risk is insufficient to overcome the courts presumptively reasonable decision to discharge the jury." **(See Oklahoma Court of Criminal Appeals opinion filed 7-3-24)**

This determination is unreasonable and contrary to clearly established federal law rule 26.3.

The Oklahoma Court of Criminal Appeals stipulates that the first three factors that determines whether jeopardy attached were evident, but the fourth and fifth are in dispute.

The five factors to determine if jeopardy attached to a jury trial are

1)the defendant must be put upon trial before a court of competent jurisdiction.

2)the indictment or information against the defendant must be sufficient to sustain a conviction

3)the jury must have been sworn to try the case

4)after being impaneled and sworn, the court must have unnecessarily discharged the jury

5)such discharge of the jury must have been without the consent of the defendant.

When these things concur, then the discharge of the jury constitutes jeopardy and operates as an acquittal of the defendant, and the defendant cannot again be placed on trial for the same offense.

The fourth factor to determine whether jeopardy attached to the petitioner's trial, can be demonstrated by the fact that there were less drastic available alternatives that would have remedied all covid concerns prosecutors presented to the trial court and the Oklahoma county public defender's office to obtain an agreement for a mistrial. The jury was unnecessarily discharged ex parte as well as state prosecutors. State prosecutor did not have covid 19 and had not tested positive at the time the jury was discharged so no compelling manifest necessity was valid or confirmed to satisfy discharge of a sworn jury.

5)The fifth factor can be demonstrated by the fact that the states attorneys induced and provoked the Oklahoma county public defender's office to join a motion for a mistrial based solely off health and safety concerns that were not a threat or a reality to the defendant's jury trial and ex parte communications that resulted in the states attorneys being excused ex parte to go into quarantine without taking a covid test.

The fact that the states attorneys used health and safety concerns that did not suffice to obtain consent/agreement for mistrial while health and safety concerns could have been cured by state prosecutors taking a routine covid test before going into quarantine shows lawfully the defendant's consent was no consent at all due to the state prosecutors provoking and misleading the Oklahoma county public defender's office into the agreement with health and safety concerns that were not valid concerns.

Unfortunately, at the expense of the defendants fifth amendment rights against double jeopardy the states prosecutors used health and safety concerns to gain consent for the mistrial and the defendant was subsequently retried for the same offenses.

Oklahoma county public defenders erroneously advised the petitioner not to object to the mistrial stating "an objection would make the judge mad."

The original prosecuting attorneys were not present at the hearing to declare a mistrial and the jury was discharged ex parte and outside the presence of the petitioner and the attorney's contrary to clearly established federal law.

This exposes the petitioner to prejudice since the record does not reflect or confirm the time the jury was actually discharged.

Upon review of whether the jury was discharged before declaration of the mistrial or after declaration of the mistrial the record is silent undermining the petitioners right to retain primary control over the course to be followed and the validity of the proceeding.

If the jury was discharged after declaration of the mistrial then why did the trial judge not follow clearly established federal law and bring the jury back into the court room during the trial hearing and discharge the jury in front of the petitioner and the attorneys in open court and on the record according to federal procedure. No one at the trial hearing **held 9-15-21** had covid and if the jury was brought into the court room before the hearing started (**see transcripts from 9-15-21** trial judge stated "I will bring the jury back in − I will excuse them for the day")why not bring them back in at the end of the trial and discharge the jury during the trial in front of the petitioner and the attorneys on record and in open court.

The discharge of the jury outside the presence of the defendant and the attorneys off record was unreasonable and prejudices the petitioner because there is no way to confirm for a fact the jury was discharged after the declaration of a mistrial because there is no record of the jury being present at the end of the trial (**see transcripts from 9-15-21**) besides the trial judge stating " I will bring the jury back in –I will excuse them for the day."

The jury was never physically present during the mistrial hearing or in court room when the petitioner's trial was concluded.

This fact alone shows the trial judge was the only person present when the jury was dismissed off record and since the petitioner is supposed to retain primary control over the course to be followed when a mistrial is declared this is a clear attempt to subvert federal procedure and undermine the outcome.

The defendant told public defenders he objected to the mistrial and was advised by Oklahoma county public defenders not to object to the mistrial.

Considering all the circumstances of the petitioner's case that prompted the mistrial the false narrative presented to the Oklahoma county public defender's office to provoke consent, ex parte communications between trial judge and state prosecutors about substantive matters were state prosecutors told the trial judge "there would not be an objection by the defense to the mistrial. "Also dismissing original state prosecutors ex parte to go into quarantine without taking covid test confirmed and supported by the record of the proceeding had **on 9-15-21.**

Actions taken that clearly prejudice the petitioner creates a reasonable probability that

consent for mistrial was unlawful and provoked through false narrative presented by state

prosecutors.

The public defender's office failed to file a motion to recuse and/or disqualify

Not because of strategic decision, but because public defender Jonathan Neal did not

want to put his law license on the line. It is unreasonable for public defender Jonathan

Neal to assume he would be putting his law license on the line if he filed a motion to

recuse. Jonathan Neal never told the petitioner why he would be putting his law license

on the line if he filed a motion to recuse.

The statement made by Jonathan Neal and the failure to file the motion to recuse, when

public defender's office knew of the contempt citation and the potential for judicial bias

due to disrespect and criticism of the trial judge and the high probability that the average

judge would not be able to remain neutral in the matter after being told fuck you and

called a cocksucker by a defendant.

Public defender Jonathan Neal was conflicted.

The defendant was entitled to a fair trial from an unbiased court.

Public defender Jonathan Neal put his personal interests to not put his law license on the

line before the interests of the client. The fact that the trial judge would have been

required to recuse pursuant clearly established federal law when a motion to disqualify is

timely filed and the United States supreme courts mandate that trial judges affected by

contempt if said contempt charge involves disrespect or criticism of trial judge, is thereby

disqualified demonstrates defendant was prejudiced by omission to file motion to recuse and denied due process of law as well as effective assistance of counsel.

The Public defender's office provided ineffective assistance of counsel and deprived the petitioner of substantial rights by waiving petitioners right to be present during the entire trial. The fact that the public defenders waived the petitioner's presence and took fundamental steps during critical stages of the trial that fatally prejudiced the petitioner by denying petitioner the right confrontation and opportunities to be heard and defend in person. The right to evaluate and respond to fundamental matters that arose during the trial that ultimely would decide the aggravating factor of the charges and affect the jury's verdict. The jury presented the court with a very important question during deliberations. The question presented to the court stated "Does a gun or imitation gun have to be present to satisfy #8 on instructions or does it just have to real in the mind of the victim." Number eight is an element of the crime of robbery that the states attorney did not prove beyond a reasonable doubt as to all five robbery charges. The state did not prove beyond there was a gun present at all five robbery charges. Obviously, the jury was contemplating the fact that the states attorneys did not prove beyond a reasonable doubt a gun was present at all five robberies,' otherwise the jury would not have presented this particular question to the court. The jury was unclear on a fundamental element of the robbery charges and the response to the jury question would clearly have an effect on the jury's verdict. The trial court refused to address the jury's question and instructed the jury to keep deliberating through a note sent through the court's bailiff. The response to the jury question was contrary to clearly established federal law and the supreme courts of

the United States mandate that any communication with the jury during deliberations should be made in open court in the presence of the defendant. and the defendants attorneys.

The fact that the public defenders waived the defendant's presence and agreed to the response given to the jury without notifying the defendant until after the jury returned the verdict ten minutes after the trial courts response to the jury question, deprived petitioner from the right to be heard and lodge objection to response.

Given the probative value of the jury question any competent reasonable attorney would have demand a more elaborate response to the jury's question, and notified the defendant prior to agreeing to the response. It cannot be said for a certainty the course of action taken by the public defender's office concerning the jury question was harmless beyond a reasonable doubt, and did not prejudice the defendant. A fundamental element of the crime of robbery was unclear to the jury when the verdict was returned ten minutes after receiving the response to the jury question. This is clearly plain and obvious error. The petitioner objected on the record to the public defender's office representing the petitioner at jury trial due to the conflict of interest prior to the beginning of the first trial. One significant conflict mentioned was a complete breakdown in communication that manifested during critical stages of the trial. The defendant wanted the jury polled for obvious reasons after the verdict was returned ten minutes after presenting the court with a fundamental question and the failure to explain the 8th element of the crime of Robbery with a firearm. The public defender told the judge that the defense did not want the jury

33